[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
CMEMORANDUM OF DECISION
Plaintiff Mill Pond Village Associates (hereinafter sometimes "Mill Pond") brought this summary process action against the defendants alleging their breach of a residential lease "by failure to abide by property rules and regulations and lease terms concerning maintenance of a pet on the premises after written warning."
Defendant Manuel Villamarin (hereinafter sometimes "Villamarin") appeared and denied that allegation. He also alleged the following special defenses: 1) The pet regulations violate General Statutes § 47a-9(3) in that the regulations are not applicable to all tenants; 2) the pet regulations violate General Statutes § 47a-9(5) in that the defendant was not CT Page 12743 provided notice of the regulations at the time he entered into the lease; and 3) the defendant paid $300 to the plaintiff in order to have "pets" in his unit.
After a trial at which Villamarin and plaintiffs property manager testified, I find that Mill Pond as Lessor and Villamarin as Lessee entered into a written lease for premises known as 1-C Townhouse Road, Broad Brook, Connecticut. In his "Application for Residency", Villamarin disclosed in writing that he had one dog, a Chihuahua. He paid $300.00 in order to maintain the pet on the premises. After entering in possession of the leased premises, he added two more dogs, two Rottweiler.
By letter dated April 30, 1999, Villarmarin was notified by plaintiff, in pertinent part as follows:
 [U]pon signing your lease at Mill Pond Village you agreed to comply with the property rules and regulations as stated in your lease agreement. These rules do not permit the maintenance of any pets on the property without specific written approval for each pet. While you have paid a pet deposit in the amount of $300 for one Chihuahua, you have never signed the required pet agreement, nor have you ever secured any form of permission to maintain any other pets on the premises. . . . You must obtain written permission by way of a signed pet agreement for your Chihuahua to remain on the premises, and you must permanently remove any other dogs from the property. Failure to make these changes by May 15, 1999, will constitute cause for immediate termination of you lease. . . .
The Court finds that the plaintiff properly served a notice to quit and that the plaintiff, in substance, complied with the notice requirements of § 47a-15 and § 47a-23. SeeJefferson Garden Associates v. Green, 202 Conn. 128, 143 (1987);Kapa Associates v. Flores, 35 Conn. Sup. 274 (1979).
The Kapa notice to the defendants advised them that they were keeping pets in violation of the terms and conditions of their lease. While the notice did not specifically inform the defendants that they were violating the policy prohibiting more than one dog or certain dogs, the curative section clearly indicated that removal of the two Rottweiler would be the remedy.
At the time of trial, Villamarin still maintained the CT Page 12744 Chihuahua and the two Rottweiler on the premises.
Villamarin claims that when he signed the lease he was not told he could have only one pet or that certain pets were forbidden because size. He claims he was not aware of the specific regulations until he received a letter dated March 30, 1999, from management. He also claims that other tenants have large dogs and some have more than one dog in violation of the rules.
Mill Pond's rules and regulations are posted in the community room and are referred to in the newsletter. Long term residents with large dogs have been "grand-fathered" to allow them to keep a nonconforming pet, i.e. a large dog, until it dies. No new large dogs are allowed; not more than one dog per unit is allowed. The manager knows of no tenant with more than one dog. When she becomes aware of more than one dog in a unit she writes to the tenant about the violation.
The lease signed by Villarmarin provides as follows: "The restrictions contained hereunder are material obligations under the Lease. . . . "LESSEE SHALL NOT HOUSE ANY DOG, CAT OR OTHER ANIMAL IN THE PREMISES, IN THE BUILDING OR OTHERWISE WITHIN THE CONFINES OF THE COMMUNITY without the prior written consent of lessor."
General Statutes § 47a-9(3) requires only that the "rule or regulation applies to all tenants in the premises in a fair
manner." (Emphasis added.) It does not require that the rule or regulation applies to all tenants in precisely the same way. Mill Pond's manager applies the rules fairly.
General Statutes § 47a-9(5) requires that the tenant have notice of the rule or regulation at the time he enters into the rental agreement or when the rule or regulation is adopted. The Lease signed by the defendant afforded him notice that he could not house any pet without written consent of the lessor. At the time the Lease was executed, the defendant did not possess the two Rottweiler. The Lease is clear that he cannot house those additional pets without the prior written consent of the landlord. He has no such consent.
As to the third special defense, the evidence does not support the claim that "the defendant paid $300 to the plaintiff in order to have pets in his unit." (Emphasis added.). In his CT Page 12745 application, the defendant indicated only one pet — a Chihuahua. There was no evidence that he even owned or possessed the two Rottweiler when he entered the lease and paid the $300 fee.
At the time of trial, the defendant was still in possession of the premises, had not signed a pet addendum for the Chihuahua,[1] and had not removed the two Rottweiler from the property.
The plaintiff has sustained its burden to prove the allegations of the complaint; the defendant has failed to sustain his burden with respect to any of the three special defenses.
Accordingly, judgment for immediate possession may enter in favor of the plaintiff.
Tanzer, J.